UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR CRUZ, BARBARA BARTLEY, <br><br>  Plaintiffs, <br><br> v. <br><br> CITIFINANCIAL MORTGAGE COMPANY, *et al.*, <br><br>  Defendants. | Civil No. 06-CV-819-L(WMc) <br><br> **ORDER DISMISSING ACTION WITH PREJUDICE and CLOSING CASE** |

Edgar Cruz and Barbara Bartley ("plaintiffs" or "Cruz and Bartley"), appearing *pro se*, filed the above-captioned case on April 7, 2006, and sought leave to proceed *in forma pauperis*. The Court denied the motion and dismissed the complaint without prejudice. [doc. #3]. On June 14, 2006, plaintiffs again sought leave to proceed *in forma pauperis*. The Court denied plaintiffs' renewed motion and dismissed the first amended complaint. Plaintiffs were directed to either pay the filing fee or submit an amended motion to *proceed in forma pauperis* within 30 days of the September 11, 2006 Order and file a second amended complaint. Plaintiffs paid the filing fee and the second amended complaint ("SAC") was filed January 26, 2007. [doc. #12]. The SAC names as defendants: Citifinancial Mortgage Company ("Citifinancial"); Vermont Supreme Court; Judge Matthew Katz; Judge Helen Toor; and Office of the Clerk, Washington County Superior Court. Plaintiffs bring their SAC under 42 U.S.C. § 1983 alleging "deprivation of property absent procedural due process" and seeking an "injunction against state foreclosure

statute" and damages for wrongful foreclosure, and declaratory relief. (SAC at ¶ 1).

Thereafter, plaintiffs sought a temporary restraining order that the Court denied on July 17, 2007. [doc. #14]. On September 27, 2007, the Honorable Napoleon A. Jones recused himself and the case was reassigned to the undersigned. The Court has reviewed the entire file in this action and has determined that the Court lacks subject matter jurisdiction over the claims alleged in this action.

## DISCUSSION

### 1.   Background

Plaintiffs allege that they purchased real property in Cabot, Vermont in 1994. (SAC at ¶ 8). Plaintiffs further allege that they executed a Promissory Note secured by the Mortgage Deed on the property in 2001. (SAC at ¶¶ 10, 11). In December 2001, the Promissory Note and Mortgage Dee were assigned to defendant Citifinancial. (SAC at ¶ 12). Around that same time, plaintiffs were in default on the Note.

Although they were attempting to cure the default (SAC at ¶ 14), on July 30, 2002, Citifinancial filed a complaint for foreclosure in the Superior Court for the State of Vermont, Washington County against Cruz and Bartley. (SAC at ¶ 18). A trial was conducted and on June 24, 2004, Judge Allen Cook entered his findings of fact and conclusions of law that found in Citifinancial's favor: "The court therefore concludes that Citifinancial is entitled to foreclose and Defendants' defenses and/or counterclaims have no merit." (SAC at ¶ 20).

Cruz and Bartley filed a motion for permission to appeal which Judge Cook granted. (SAC at ¶ 21). But Judge Matthew Katz, a defendant in the present case, submitted a letter to the Clerk of the Supreme Court indicating that no final judgment had issued and accordingly, the Vermont Supreme Court dismissed the appeal. (SAC at ¶¶ 22, 23). Subsequently, a final judgment order and decree of foreclosure was entered and Cruz and Bartley again filed a motion for permission to appeal. Judge Katz denied the motion on December 7, 2004. (SAC at ¶ 24).

In 2005, Cruz and Bartley sought to vacate the judgment order and decree of foreclosure but Judge Helen Toor denied the motion. Plaintiffs filed a notice of appeal with respect to their motion to vacate the judgment order and with respect to the denial of their motion for permission

to appeal. (SAC at ¶¶ 35, 36).   On December 2, 2005, the Vermont Supreme Court denied both appeals.  (SAC at ¶ 37).

On January 9, 2006, Cruz and Bartley filed a Complaint for Extraordinary Relief under Vermont Rules of Appellate Procedure before the Vermont Supreme Court.  (SAC at ¶ 47).  The Court dismissed the action.  (SAC ¶ 48).  Plaintiffs also filed a motion to stay which was denied. (SAC at ¶ 55)

Plaintiffs filed the present action seeking a "declaration of rights stating that the defendants' actions, procedures as described in this complaint violate the due process clauses of the United States."  (SAC at ¶ 13).  Cruz and Bartley allege that there were violations of Vermont Rules of Civil Procedure with respect to the running of the time of redemption and the stay of the judgment  (SAC at ¶¶ 32-34); Judge Katz violated Vermont law by his "lateral incursion" into "appellate due process" which resulted in a deprivation of plaintiffs' rights and property under the United States Constitution (SAC at ¶¶ 25-27); as a result of errors on the part of the Vermont court, Cruz and Bartley  were "effectively denied a redemption period"  (SAC at ¶ 40); and the Clerk of the Superior Court, also a defendant here, erred by issuing a Certificate of Non Redemption prior to the expiration of the appellate period and did not copy plaintiffs (SAC at ¶ 34)

In addition to a declaration of rights, plaintiffs seek an award of damages; an award of costs, including attorneys' fees; and a preliminary injunction "returning the described property to the Plaintiffs preventing the sale of the property, disposal of its contents, transfer of its title without the due process of law."  (SAC at 13).

**2.     Subject Matter Jurisdiction**

Federal courts have limited jurisdictional power, and therefore, are under a continuing duty to confirm their subject matter jurisdiction over a particular case before reaching the merits of a dispute.  *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact

and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (*quoting Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see In re Mooney*, 841 F.2d 1003, 1006 (9th Cir. 1988) ("Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction it is nothing."), *overruled on other grounds in Partington v. Gedan*, 923 F.2d 686, 688 (9th Cir. 1991).

The *Rooker-Feldman* doctrine provides that a federal district court may exercise only original jurisdiction and thus may not exercise appellate jurisdiction over state court decisions. *See Dubinka v. Judges of the Superior Court of California*, 23 F.3d 218, 221 (9th Cir. 1994), (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86, 103 S. Ct. 1303, 1314-17 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150 (1923)); *see also* 28 U.S.C. § 1257(a). "The purpose of the [*Rooker-Feldman*] doctrine is to protect state judgments from collateral federal attack. Because federal district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001); *see also Board of Trustees of Leland Stanford Junior University v. Modual A/C Systems, Inc.*, 54 F. Supp.2d 965, 969 (N.D. Cal. 1999) (noting that *Rooker-Feldman* doctrine derived from both federalism and comity)(citing *Howlett v. Rose*, 496 U.S. 356, 372-73 (1990)); *Martin v. Wilks*, 490 U.S. 755, 783 (1989).

Federal courts "must give the same preclusive effect to a state court judgment that the judgment would be given in courts of the rendering state." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir. 1999); 28 U.S.C. § 1738. In *Rooker* and *Feldman*, the United States Supreme Court "took this principle a step further and held that lower federal courts lack jurisdiction to review state court judgments." *Fielder*, 188 F.3d at 1034. To allow the district court to review a state court judgment "would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Court is strictly original." *Rooker*, 263 U.S. at 416. Thus, when this doctrine applies, lower federal courts dismiss particular claims, or an entire action, based on lack subject matter jurisdiction. *See, e.g., Worldwide Church of God v. McNair*, 805 F.2d 888, 893 (9th Cir. 1986) (affirming district court's dismissal of an action for lack of subject

matter jurisdiction under *Rooker-Feldman*); *see also* FED. R. CIV. P. 12(b)(1) (authorizing the court to dismiss an action for lack of subject matter jurisdiction).

The *Rooker-Feldman* doctrine "applies even when the challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God*, 805 F.2d at 891. In contrast, a claim is not precluded where the plaintiff presents a "general" constitutional challenge that does not require review of a final state court decision in a particular case. *Id*.

The *Rooker-Feldman* doctrine also extends to bar lower federal courts from hearing claims that are "inextricably intertwined" with the claims adjudicated in the state court action. *See Feldman*, 460 U.S. at 482 n.16; *Fielder*, 188 F.3d at 1034. One Circuit has explained that "[a] claim is inextricably intertwined under *Rooker-Feldman* if it 'succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested . . . would effectively reverse the state court decision or void its ruling.'" *Fielder*, at 1034-35 (*quoting Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

In discussing the "inextricably intertwined" test associated with the *Rooker-Feldman* doctrine, the Ninth Circuit noted that "[o]nce a federal plaintiff seeks to bring a forbidden *de facto* appeal . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden *de facto* appeal is brought." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). Moreover, a federal plaintiff is "forbidden to seek a declaratory judgment invalidating the state court rule on which the state court decision relied, for the plaintiff's 'request for declaratory relief [was] inextricably intertwined with his request to vacate and to set aside the [state court] judgment.'" *Id.* (*quoting Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991)).

The *Noel* court described a general formulation of "the distinctive role of the *Rooker-Feldman* doctrine:"

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker- Feldman* does not bar jurisdiction.

*Id.* at 1164.

Here, plaintiffs complain of legal wrongs allegedly committed by the Vermont Superior and Supreme Court and seek relief in the nature of a review from the substantive decisions of those Courts. In order to assert subject matter jurisdiction, this Court would necessarily be required to review the Vermont judges' and justices' substantive legal rulings, the application of Vermont law, and the administration of the Vermont court action. Moreover, all of plaintiffs' claims are inextricably intertwined with their claims seeking review of the Vermont courts' decisions. Because of the *Rooker-Feldman* doctrine, this Court cannot undertake that review. Accordingly, this Court lacks subject matter jurisdiction over plaintiffs' action and, therefore, must dismiss the case in its entirety.

### 3. **Eleventh Amendment Immunity**

In addition to lack of subject matter jurisdiction, the Court would dismiss much of this action on Eleventh Amendment immunity grounds. The Eleventh Amendment to the United States Constitution bars suits that seek either damages or injunctive relief against a state or an arm of the state.[1] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995)(*per curiam*); *see also Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir.1991) (stating that the Eleventh Amendment bars suits against state agencies regardless of the relief sought).

Plaintiffs name the Superior Court for Washington County, Vermont; the Vermont Supreme Court; and the Office of the Washington County Superior Court Clerk. These entity defendants are arms of the state and thus, under the Eleventh Amendment, they cannot be sued in federal court. *See, e.g., Simmons v. Sacramento County Superior Court*, 318 F.3d 1156,1161 (9th Cir. 2003) (Eleventh Amendment bars suit against state superior court); *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir.), amended, 127 F.3d 1135 (9th Cir. 1997) (state case law and constitutional provisions make clear that Superior Court is state agency); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (municipal court is arm of state protected from

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

lawsuit by Eleventh Amendment immunity); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 & n. 10 (9th Cir. 1987) (Eleventh Amendment bars suit against Superior Court regardless of relief sought).  Thus, even if the Court had subject matter jurisdiction, which it does not, all claims against the entity defendants must be dismissed on an Eleventh Amendment immunity basis.

### 4. Judicial Immunity

Similarly, even if the Court possessed subject matter jurisdiction, the judges named in this action are entitled to judicial immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  Judicial immunity is an immunity from suit for damages, not just from an ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985).  Whether an act by a judge is a judicial one relates to (1) the nature and function of the act and not the act itself, *i.e*., whether it is a function normally performed by a judge, and to (2) the expectations of the parties, *i.e*., whether they dealt with the judge in his judicial capacity.  *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099 (1978); *see, e.g., Mireles v. Waco*, 502 U.S. 9, 11-13, 112 S. Ct. 286 (1991) (judge's direction to court officers to forcibly bring person before him is function normally performed by judge and taken in aid of judge's jurisdiction over matter before him); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (judge absolutely immune for entering default judgment against prisoner who was not permitted to attend civil trial because entry of default judgment in a pending civil case is unquestionably a judicial act); *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452 (9th Cir. 1993) (judge absolutely immune for decision to bar court reporter from continuing to provide services in case over which judge served as special master because the decision was a judicial act).  Other factors in determining whether a particular act is judicial include whether: (1) the events occurred in the judge's chambers, (2) the controversy centered around a case then pending before the judge, and (3) whether the events arose directly and immediately out of a confrontation with the judge in his or her official capacity.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001).

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57 (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872)); *see also, Mireles v. Waco*, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice).  As long as the judge has jurisdiction to perform the "general act" in question, he or she is immune, however erroneous the act may have been, however injurious the consequences of the act may have been, and irrespective of the judge's claimed motivation.  *Harvey v. Waldron,* 210 F.3d 1008, 1012 (9th Cir. 2000).  Judicial immunity "is overcome in only two circumstances.  First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).

Here, plaintiffs base their claims on substantive legal decisions made by Judges Katz and Toor in the adjudication of the state court foreclosure action for property located in Vermont.  The acts plaintiffs challenge clearly are judicial in nature and accordingly, Judges Katz and Toor are immune from suit as are the Justices of the Vermont Supreme Court.

Also, insofar as plaintiffs may have intended to name the Clerk of the Court as a defendant, rather the entity, Office of the Court Clerk, the Clerk of the Court is entitled to "absolute quasi-judicial immunity because his/her challenged activities were an integral part of the judicial process." *Sharma v. Stevens*, 790 F.2d 1486, 1486 (9th Cir. 1986).

Thus, all of plaintiff's claims against the individual defendants are subject to dismissal based on judicial immunity.

### 5. **Citifinancial Mortgage Company**

Although Citifinancial will be dismissed along with the other defendants on the basis of the *Rooker-Feldman* doctrine, Citifinancial is subject to dismissal under 42 U.S.C. § 1983 as well.

Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (*en banc*).  Here, Citifinancial is a private entity.  The SAC does not set forth any allegation that Citifinancial was acting under color of state law and there are no facts to support that legal conclusion.  Moreover, the SAC is devoid of any allegation of wrongdoing on the part of Citifinancial.  Accordingly, Section 1983 does not provide for subject matter jurisdiction over Citifinancial in this case.

## CONCLUSION

Based on the above, plaintiffs' second amended complaint is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court is directed to close this action.

**IT IS SO ORDERED.**

DATED: October 1, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL